IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BENN McCURRY,<br>　　　*Plaintiff*<br><br>v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,[1]<br>　　　*Defendant* | §<br>§<br>§<br>§<br>§　Case No. 1:23-CV-00725-SH<br>§<br>§<br>§<br>§ |

**ORDER**

Before the Court are Plaintiff's Complaint, filed July 28, 2023 (Dkt. 5); Plaintiff's Brief, filed December 18, 2023 (Dkt. 18); Defendant's Brief, filed January 16, 2024 (Dkt. 20); and the Social Security record (Dkt. 12-1 through 12-13). On November 30, 2023, after the parties filed Notices of Consent, the District Court transferred this case to this Magistrate Judge for all proceedings and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 13.

## I.　Background

Plaintiff Benn Joseph McCurry, a resident of Brenham, Texas, brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking reversal of the Commissioner of the Social Security Administration's final decision denying him disability benefits. Dkt. 5.

McCurry filed his application for Title II and Title XVI Social Security disability benefits on October 6, 2019, alleging that he became disabled on June 28, 2013, because of fibromyalgia, diabetes, post-traumatic stress disorder ("PTSD"), affective mood disorder, mild degenerative disc

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted for Kikolo Kijakazi as the defendant.

1

disease of the thoraco-cervical spine, headaches, and obstructive sleep apnea. Dkt. 18 at 4-5. McCurry was born on December 1, 1987 and has "at least a high school education." *Id.* at 4. He served in the United States Navy for four years before being medically discharged in 2013 due to fibromyalgia. Dkt. 12-8 at 14. McCurry's past relevant work includes work as a hotel clerk, pharmacy technician, bomb loader, and store laborer. Dkt. 18 at 4.

The Administrative Law Judge ("ALJ") held a hearing on McCurry's application for benefits on January 8, 2021, and issued his decision denying McCurry's application of benefits on January 28, 2021. *Id.* McCurry appealed the ALJ's decision, and the Appeals Council affirmed. *Id.* McCurry then filed his first suit for judicial review under 42 U.S.C. § 405(g). *McCurry v. Kijakazi*, 1:21-CV-00731-RP (W.D. Tex. Aug. 23, 2021). On August 5, 2022, this Magistrate Court issued a Report and Recommendation that the District Court reverse the ALJ's decision and remand the case to the Commissioner for further administrative proceedings to consider McCurry's fibromyalgia, as set out in Social Security Ruling 12-2p. *Id.* at Dkt. 16. The District Court adopted the Report and Recommendation in full and remanded the case to the Commissioner for further administrative proceedings. *Id.* at Dkt. 17.

On remand, the ALJ held a second administrative hearing on April 5, 2023. Dkt. 18 at 4. McCurry, who was represented by attorney Jared Cook, and vocational expert ("VE") Thomas E. Bott, Ph.D., a licensed and certified rehabilitation counselor, testified at the hearing. Dkt. 12-8 at 5. McCurry testified that the U.S. Department of Veterans Affairs ("VA") gave him a 90% disability rating and considered him "unemployable." *Id.* at 36. He testified that he cannot work because he needs frequent breaks due to his fibromyalgia and PTSD, and that he often gets agitated and angry and tries to avoid interacting with others. *Id.* at 37. McCurry also testified that he suffers from constant pain and has problems sitting, standing, and walking. *Id.* at 39-41. But he also

admitted that he is able to walk a mile for exercise, goes to the movies, and visits his friends at "Gamestop and Mattress Firm" daily. *Id.* at 41-42.

The VE testified that a hypothetical individual of the same age, education, and residual functional capacity[2] ("RFC") as McCurry could perform some sedentary, unskilled work, including escort vehicle driver, parimutuel ticket checker, and microfilm document preparer. *Id.* at 51-52.

On November 27, 2023, the ALJ issued his decision finding that McCurry was not disabled. *Id*. at 20. While the ALJ found that McCurry suffered from PTSD, affective mood disorder, fibromyalgia, diabetes, obesity, diabetes, mild degenerative disc disease, headaches, and obstructive sleep apnea, he found that McCurry had the "residual functional capacity to perform a range of sedentary work." *Id.* at 13. Given McCurry's age, education, work experience, and RFC, the ALJ found that McCurry could work as an escort vehicle driver, parimutuel ticket checker, and microfilm and document preparer. *Id.* at 20.

McCurry then filed this suit, asking the Court to reverse the ALJ's decision and award him disability benefits. Dkt. 5. McCurry argues that the ALJ committed legal error by failing to explain the persuasiveness, supportability, and consistency of certain medical opinions in the record, in violation of 20 C.F.R. § 404.1520c. Dkt. 18 at 9.

## II.  Legal Standards

### A. Disability Determination

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[2] A claimant's residual functional capacity "is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017).

3

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a Social Security claimant is disabled, the Commissioner uses the five-step evaluation process enumerated in 20 C.F.R. § 404.1520. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant has the RFC to still do his "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). If the Commissioner meets his burden at the fifth step, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 754.

**B.  Judicial Review**

A district court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). A court reviews the Commissioner's denial of Social Security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.* "Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence must be more than a scintilla, it need not be a preponderance." *Webster*, 19 F.4th at 718. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Whitehead v. Colvin*, 820 F.3d

776, 779 (5th Cir. 2016). "The court does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*

The harmless error doctrine applies to social security cases, and courts will not vacate the Commissioner's decision unless the claimant's rights are substantially affected. *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009). The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error. *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

### III. Analysis

McCurry argues that the ALJ violated 20 C.F.R. § 404.1520c and committed reversible legal error by failing to (1) assign a "persuasiveness value to the medical opinions" of Dr. Juan Gonzalez, Dr. Sylvia Chen, and Dr. Matthew Wong, and (2) evaluate the "supportability and consistency" of Dr. Chen and Dr. Wong's medical opinions. Dkt. 18 at 7.

**A. Section 404.1520c**

20 C.F.R. § 404.1520c explains how ALJs consider and articulate medical opinions[3] and prior administrative medical finings for claims filed on or after March 27, 2017. "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Webster*, 19 F.4th at 718-19. Instead, an ALJ now

---

[3] The regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities . . . ." 20 C.F.R. § 404.1513(a)(2).

5

"considers a list of factors in determining what weight if any, to give a medical opinion." *Id.* at 719. These factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). "The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on 'objective medical evidence and supporting explanations' and the 'consistency' of the source's opinion with the evidence from other medical and nonmedical sources in the claim." *Webster*, 19 F.4th at 719.

The regulations also set forth certain "articulation requirements" that the ALJ follows in explaining how "persuasive" he finds the medical opinions and prior administrative findings in a claimant's case record. 20 C.F.R. § 404.1520c(b). The ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* § 404.1520c(b)(1). But when a medical source provides *multiple* medical opinions or prior administrative findings, the ALJ is required to "articulate how [he] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through c)(5) of this section, as appropriate." *Id.* The ALJ also must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(2). The ALJ is not required to explain how he considered the other factors. *Id.* If an ALJ commits legal error and violates these requirements, "remand is warranted only if the ALJ's error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (citing *Shinseki*, 556 U.S. at 407-08).

### B. Dr. Gonzalez's Opinion

The record shows that McCurry received ongoing therapy and medication for anxiety, depression, bipolar disorder, and PTSD. Dkt. 12-8 at 16. On August 7, 2019, McCurry visited Juan Gonzalez, M.D., a VA psychiatrist, and reported experiencing "some mild hypomanic symptoms" after he increased his dosage of Wellbutrin and Abilify. Dkt. 12-13 at 828. Specifically, McCurry stated that "he's feeling like spent money" and "reports that his thoughts are racing and that hallucinations have returned although not as frequent or severe as they have previously been." *Id.* Dr. Gonzalez prescribed a lower dose of his medications to "control mood instability and hallucinations." *Id.*

Dr. Gonzalez observed that McCurry was "well groomed and well dressed"; "friendly and cooperative with good eye contact"; had an appropriate affect; denied "any auditory or visual hallucinations"; had "goal directed and linear" thought processes; had no gross cognitive impairment; had good insight and judgment; and denied thoughts of suicide. *Id.* at 828-29. Dr. Gonzalez found that: "Based on patient's long history of bipolar disorder with chronic mood instability and a history of psychosis it is this provider's opinion that he is not employable at this time." *Id.* at 828.

While he acknowledged in his decision that Dr. Gonzalez had opined that McCurry "was not employable," the ALJ found that Dr. Gonzalez's opinion was "not consistent with mental status examinations findings at the same time indicating the claimant was well groomed, well dressed, friendly, and cooperative with good eye contact." Dkt. 12-8 at 17. The ALJ pointed out that Dr. Gonzalez had reported in his same treatment notes that McCurry's "affect was appropriate with full range, and he demonstrated goal directed and linear thought processes, with no auditory or visual hallucinations and no delusions." *Id.* The ALJ also noted that Dr. Gonzalez had reported

7

that "[s]uicidal or homicidal ideation was absent and there was no gross cognitive impairment, with good insight, and no impairment in judgment." *Id.* Thus, the ALJ found that Dr. Gonzalez's employability finding conflicted with his other findings in the record.

The ALJ also explained that Dr. Gonzalez's unemployability opinion "is not supported by the other numerous benign mental status examination findings appearing throughout the record." *Id.* He cited subsequent treatment notes from Dr. Gonzalez in July 2022, which noted that McCurry was "alert, oriented to person, place and time as evidenced by verbal responses," and had no suicidal ideation, hallucinations, or delusions. *Id.* (citing Dkt. 12-13 at 1595). The ALJ also referred to many other treatment notes in the record reporting that McCurry was "cooperative with good eye contact"; had "logical, organized, goal-directed" thought processes; was "alert and oriented to time, place, person, situation"; had "fair/good" judgment; and had "no auditory, visual, tactile hallucinations reported or noted." Dkt. 12-13 at 1576; *see also id.* at 75, 629, 755, 818, 1682-84, 1686, 1727, 1789, 1813; Dkt. 12-7 at 531-32, 534. Based on these records, the ALJ found Dr. Gonzalez's opinion not supported by the record.

Although the ALJ refers to the two most important factors (supportability and consistency) under 20 C.F.R. § 404.1520c(b) in evaluating the persuasiveness of Dr. Gonzalez's unemployability opinion, McCurry argues that the ALJ violated that regulation by failing to state in his decision whether Dr. Gonzalez's opinion was "persuasive", "somewhat persuasive", "less persuasive", or "completely unpersuasive." Dkt. 18 at 10. McCurry argues that "[t]he ALJ's failure to assess a persuasiveness value warrants remand." *Id.*

Under 20 C.F.R. § 404.1520b(c)(3)(i), statements that a claimant is or is "not disabled, blind, able to work, or able to perform regular or continuing work" are "[s]tatements on issues reserved to the Commissioner" and deemed "inherently neither valuable nor persuasive." The regulations

8

specifically relieve ALJs from providing "any analysis" in their decisions about how such evidence was considered in their decisions, "even under § 404.1520c." 20 C.F.R. § 404.1520b(c)(3)(i). The ALJ was not required to provide any analysis of Dr. Gonzalez's opinion that McCurry was "not employable at this time" under the regulations. *Id.*; *see also Miller*, 2023 WL 234773, at *2 (stating that ALJ was not required to provide any analysis how he considered treating physician's opinion that "claimant was unable to work" under 20 C.F.R. § 404.1520b(c)(3)(i)); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (holding that ALJ was not required to consider six factors listed in the regulations with respect to doctor's statement that claimant "was unable to work" because it was a "legal conclusion" reserved to the Commissioner and "not a medical opinion within the meaning of the regulation").

Even if the ALJ was required to evaluate Dr. Gonzalez's opinion as a medical opinion under 20 C.F.R. § 404.1520c, as the ALJ did, "a case will not be remanded simply because the ALJ did not use magic words." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "Remand is only appropriate where there is no indication the ALJ applied the correct standard." *Id.*

As detailed above, the ALJ explained in his decision how he "considered the supportability and consistency factors" as to Dr. Gonzalez's opinion, which is all that is required. *See* 20 C.F.R. § 404.1520c(b)(2) (stating that the ALJ need only consider "the supportability and consistency factors for a medical source's medical opinions or prior administrative findings"). The ALJ gave "some explanation" of his reasons for rejecting Dr. Gonzalez's unemployability opinion. *See Clemons v. Kijakazi*, No. 1:22-CV-1002-ML, 2024 WL 578575, at *5 (W.D. Tex. Feb. 9, 2024) (stating that an ALJ's explanation of persuasiveness is sufficient when the ALJ provides "some explanation for her reasons for rejecting a medical opinion of record").

Finally, McCurry fails to show that he was prejudiced by the ALJ's failure to discuss the persuasiveness of Dr. Gonzalez's opinion. McCurry argues that because the ALJ did not assess the persuasiveness value of Dr. Gonzalez's opinion, "it is not possible to determine to what extent the medical opinions were accepted, or rejected, and as a result meaningful judicial review is impossible." Dkt. 18 at 10. As discussed above, the ALJ's decision makes clear that he considered Dr. Gonzalez's opinion, but did not agree with it. McCurry fails to show that if the ALJ had given further explanation as to whether Dr. Gonzalez's opinion was persuasive or unpersuasive, he would have adopted it. *See Miller*, 2023 WL 234773, at *4 (rejecting claimant's argument that remand was required where she failed to show prejudice from ALJ's failure to sufficiently discuss persuasiveness of medical opinion). McCurry essentially asks the Court to reweigh the evidence to show that he was prejudiced by the ALJ's failure to explain, which the Court cannot do. *See Garcia*, 880 F.3d at 704 (stating that courts "will not re-weigh the evidence or "substitute our judgment for the Commissioner's").

### C. State Agency Psychological Consultant Opinions

The Commissioner found that McCurry was "not disabled" in both the initial Disability Determination Explanation ("DDE") and on reconsideration. Dkt. 12-3 at 12, 29. Sylvia Chen, Ph.D., was the state agency psychological consultant ("SAPC") at the initial level and assessed McCurry's Mental Residual Functional Capacity ("MRFC") on March 30, 2020. Dr. Chen did not examine McCurry, but evaluated the medical evidence in the record. Although McCurry had "significant restrictions" due to his psychological conditions, Dr. Chen found that he could "sustain some level of gainful employment." *Id.* at 7. Dr. Chen found that "recent" mental status examinations showed that McCurry's mental related limitations "are not fully debilitating." *Id.* She also found that the "alleged degree of symptom severity and functional limitation are not fully

10

consistent with or substantiated by objective findings." *Id.* Dr. Chen found that the medical evidence in the record showed that while McCurry had certain psychological limitations, those limitations did not "fully preclude" him from "performing basic work activities" or "to function independently, effectively, and appropriately on a sustained basis at all levels." *Id.*

Dr. Chen found that McCurry's MRFC included moderate limitations in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at consistent pace without an unreasonable number and length of rest periods; marked limitations in the ability to carry out detailed instructions; and moderate limitations in the ability to interact appropriately with the public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. *Id.* at 9-11. She also found that: "Clmt [sic] can understand, remember, and carry out only simple instructions, make simple decisions, attentd [sic] and concentrate for extended periods, interact adequately with co-workers and supervisors, & respond appropriately to changes in routine work setting." *Id.* at 11.

Matthew Wong, Ph.D., was the SAPC at the DDE Reconsideration level, and assessed McCurry with the same MRFC assessment as Dr. Chen. *Id.* at 25-27.

The ALJ acknowledged in his decision that he considered Dr. Chen and Dr. Wong's opinions that "limited the claimant to simple work" and explains why he did not adopt their findings:

> The prior administrative findings of psychological consultants Drs. Chen and Wong limited the claimant to simple work. However, considering the moderate limitations in interacting with others, maintaining concentration, persistence, and pace, and adapting or managing oneself, the undersigned has included more specific functional limitations to address these areas of functioning, supported by numerous additional medical records submitted for consideration since the prior administrative medical opinions were rendered.

11

Dkt. 12-8 at 18. Rather than limiting McCurry to simple work, the ALJ determined that McCurry had the RFC "to perform a range of sedentary work," with the following mental limitations: "simple repetitive one to three step tasks"; "no more than occasional interactions with the public and supervisors"; and "only occasional changes in the work setting or required to work at a forced pace." *Id.* at 13. In assessing McCurry's RFC, the ALJ considered McCurry's testimony, the medical evidence in the record, and the medical opinions and administrative findings in the record in accordance with the regulations. *Id.* at 13-18. ALJs, not agency consultants, are responsible for determining an applicant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

McCurry argues that the ALJ's evaluation of Dr. Chen and Dr. Wong's opinions violated Section 404.1520c(b) because he failed to assign a persuasiveness value to their opinions or mention the supportability and consistency factors. As the Fifth Circuit has "noted time and again, an 'ALJ is not always required to do an exhaustive point-by-point discussion' of the evidence she reviews." *Silva v. Kijakazi*, No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). Although the ALJ did not adopt a specific persuasiveness assessment and did not mention the supportability and consistency factors as to Dr. Chen and Dr. Wong's opinions, his decision makes clear that he considered those opinions and provided some explanation for why he found them unpersuasive. Even if the ALJ did not address every aspect of these opinions, that "does not necessarily mean that he failed to consider them." *Silva*, 2023 WL 3723628, at *1. The ALJ explained that his findings came only after carefully considering all the medical evidence in the record. Because the ALJ considered these opinions, the Court will not "second guess" his decision on the matter. *Id.*

Finally, McCurry does not show that the ALJ's failure to discuss the supportability and consistency factors prejudiced the outcome of his case. McCurry argues that the ALJ's failure to

discuss these factors was prejudicial because "the moderate limitations that were assessed by Drs. Wong and Chen could have been work preclusive." Dkt. 18 at 15. McCurry misunderstands his burden to show prejudice. McCurry argues that the ALJ's error was that he did not provide a sufficient explanation of his consideration of the opinions. As discussed above, his decision makes clear that he considered those opinions but did not find them persuasive in light of the other medical evidence in the record. McCurry does not show that if the ALJ had given further explanation in his decision, he would have adopted those opinions. Accordingly, he does not show prejudice. *See Miller*, 2023 WL 234773, at *4. Again, McCurry is asking the Court to reweigh the evidence, which the Court cannot do. *Garcia*, 880 F.3d at 704.

## IV. Conclusion

Because McCurry has not shown that the ALJ committed legal error that prejudiced his case, the Court must **AFFIRM** the decision of the Social Security Commissioner.

**SIGNED** on March 6, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE